NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231169-U

NOS. 4-23-1169, 4-23-1170 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 18, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL ANDREW FORD, Defendant-Appellant. | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Rock Island County Nos. 23CF65 23CF811 Honorable Frank R. Fuhr, Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justice Steigmann concurred in the judgment.
Justice DeArmond specially concurred.

**ORDER**

¶ 1    *Held*:    Offering no reasoned argument in support of the assertions in his notice of appeal, defendant fails to establish that the circuit court abused its discretion by granting the State's petition to deny pretrial release.

¶ 2    In these two appeals, which we have consolidated on our own motion, the circuit court of Rock Island County granted the State's petition to deny pretrial release to defendant, Michael Andrew Ford. He appeals, but he submits no memorandum. By the bald assertions in his notice-of-appeal form, he fails to convince us that the denial of pretrial release was an abuse of discretion. Therefore, we affirm the judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. The Charges

¶ 5    The two appeals are in Rock Island County case Nos. 23-CF-65 and 23-CF-811.

¶ 6 In case No. 23-CF-65, defendant is charged with unlawful possession of a weapon by a felon in that, on November 25, 2022, having previously been convicted of burglary, he possessed a 9-millimeter pistol. See 720 ILCS 5/24-1.1(a) (West 2022).

¶ 7 In case No. 23-CF-811, the information is made up of three counts. Count I charges defendant with unlawful possession of a weapon by a felon in that, on October 29, 2023, having previously been convicted of burglary, he possessed "a 5.56 AR-style rifle with no buttstock and a short barrel with no serial number." See *id.* Count II charges him with resisting or obstructing a peace officer in that, on October 29, 2023, when Deputy Sheriff Kristopher Meier tried to detain him, he ran from Meier. See *id.* § 31-1(a). Count III charges defendant with obstructing identification in that, on October 29, 2023, having been lawfully detained by Deputy Sheriff Stephanie Cabral, he gave Cabral a name and date of birth that were both false. See *id.* § 31-4.5(a)(2).

¶ 8 B. Defendant's Motion for Pretrial Release in Case No. 23-CF-65

¶ 9 On January 18, 2023, in case No. 23-CF-65, the circuit court issued a warrant for defendant's arrest and set bond at $50,000, requiring, as a condition of pretrial release, that defendant post 10% of that amount as security.

¶ 10 On October 29, 2023, defendant was arrested.

¶ 11 On October 30, 2023, defendant moved for pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (changing the Act's effective date to September 18, 2023).

¶ 12 C. The State's Petition to Deny Pretrial Release in Case No. 23-CF-811

¶ 13     On October 30, 2023, in case No. 23-CF-811, the State petitioned the circuit court to deny pretrial release on the grounds that (1) unlawful use of a weapon by a felon was a detention-eligible offense under section 110-6.1(a)(6)(O) of the Code (725 ILCS 5/110-6.1(a)(6)(O) (West 2022)), (2) defendant's pretrial release would pose a real and present threat to the safety of the community (see *id.* § 110-6.1(a)(6)), and (3) defendant was highly likely to flee to avoid prosecution (see *id.* § 110-6.1(a)(8)).

¶ 14                    D. The Hearing on the State's Petition

¶ 15     On October 31, 2023, the circuit court held a hearing on the State's petition to deny pretrial release. At the beginning of the hearing, the court granted a motion by the prosecutor to amend the petition by adding case No. 23-CF-65 to the caption of the petition.

¶ 16     In support of the petition, as amended, the prosecutor proffered the following information.

¶ 17     Regarding case No. 23-CF-65, the Rock Island police located two motor vehicles that reportedly had been stolen. One of the vehicles was a Chrysler. Defendant walked by the Chrysler and denied knowing anything about it. Then he left. During their inventory search of the Chrysler, the police smelled cannabis. In a backpack inside the Chrysler, they found cannabis, a 9-millimeter pistol, and documents with defendant's name on them, including his social security card and birth certificate.

¶ 18     In case No. 23-CF-811, Deputy Sheriff Cabral pulled over a vehicle on October 29, 2023, in Carbon Cliff, Illinois, for having a broken taillight. The driver of the vehicle was female, and it was registered to Joel Ford. Defendant was sitting in the front passenger seat. Cabral smelled alcohol in the area of the passenger seat and saw a red plastic cup with alcohol in it. When Cabral asked defendant for his identifying information, defendant gave a false name, Terrence Smith, and

a false date of birth, April 5, 1998. Upon the arrival of Deputy Sheriff Meier, defendant ran and was tased and taken into custody. The police later learned defendant's correct name and discovered that an arrest warrant had been issued for him in case No. 23-CF-65. Under the front passenger seat of Joel Ford's car, the police found a 5.56-millimeter semiautomatic rifle, which lacked a serial number. The magazine of the rifle contained ammunition.

¶ 19　　　　Defendant's prior criminal history (the prosecutor continued) was as follows. In Rock Island County case No. 13-CF-137, he was convicted of committing aggravated battery by strangulation. In Rock Island County case No. 12-CF-579, he was convicted of burglary. In Rock Island County case No. 13-CF-284, he was convicted of failure to return from furlough. In Rock Island County case No. 21-CF-233, he was convicted of resisting a peace officer. In a federal case, of which the prosecutor did not have the number, defendant was convicted of being a felon in possession of a defaced firearm. Originally, this latter offense was charged in Rock Island County case No. 15-CF-928, but that case was dismissed when defendant was federally indicted.

¶ 20　　　　After this proffer by the prosecutor, defense counsel noted that the rifle was found under a seat of a car in which defendant was merely a passenger. Defense counsel argued:

>　　　"Judge, there is zero indication that he used it, touched it, or was even aware of its existence at all. The car was not his[,] and he was not driving.
>
>　　　The State cannot simply allege that someone is charged with a detainable offense and have that person detained. They still need to demonstrate that person is a real and present threat, using specific articulable facts. All persons are presumed innocent and are eligible for pretrial release.
>
>　　　We understand that given his proximity to the firearm while inside the car, he could still validly be charged with unlawful use of a weapon by a felon, but the

- 4 -

State cannot make out the case by clear and convincing evidence that he intended to use it or otherwise act in a dangerous manner, simply due to his proximity to the firearm in that moment."

¶ 21 Defense counsel further contested the asserted risk of flight:

"Your Honor, with regard to willful flight, aside from allegedly running from officers, there is no allegation of a history of willful flight to our knowledge. We would note also that isolated incidents of failures to appear in court are not evidence of willful flight under the [Act].

Judge, its only quote, 'intentional conduct with a purpose to thwart judicial process to avoid prosecution that could be considered under the willful flight standard.' "

¶ 22                                       E. The Detention Order

¶ 23 On October 31, 2023, at the conclusion of the detention hearing, the circuit court granted the State's petition to deny pretrial release on the ground of defendant's dangerousness. For the following reasons, the court found that less restrictive conditions would not assure the safety of the community:

"prior record

2 separate gun charges,

2nd case possession of loaded AR 15 in a car on [a] public highway."

¶ 24 This appeal followed.

¶ 25                                       II. ANALYSIS

¶ 26 In the notice-of-appeal form, defendant has not check marked the box corresponding to the preprinted language: "The State failed to meet its burden of proving by clear

and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." Therefore—despite defense counsel's argument, in the detention hearing, that defendant's knowing possession of the rifle was unproven (see *People v. Bailey*, 333 Ill. App. 3d 888, 892 (2002))—it is now uncontested that the proffer by the State raised a great presumption that defendant committed both offenses of unlawful possession of a weapon by a felon: one offense by knowingly possessing the pistol and the other offense by knowingly possessing the rifle. See 725 ILCS 5/110-6.1(e)(1) (West 2022).

¶ 27 Defendant makes his first contention by check marking the box in the notice-of-appeal form corresponding to this preprinted language: "The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." On the explanation lines, defendant writes, "Insufficient facts alleged in State's proffer"—merely a shorter version of the contention already made in the preprinted language.

¶ 28 The proffer would have been insufficient if it had relied on the dangerousness already inherent in the offense. Not only did the proffer have to prove, by clear and convincing evidence, that "the proof is evident or the presumption great that the defendant has committed [the] offense" of unlawful possession of a firearm by a felon (*Id.*), the State *additionally* had to prove that defendant "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(2). Section 110-6.1(e)(1) to (3) reads as follows:

"(e) Eligibility: All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence that:

(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a) [(*id.* § 110-6.1(a))], *and*

(2) for offenses listed in paragraphs (1) through (7) of subsection (a) [(*id.* § 110-6.1(a)(1) to (7))], the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986 [(750 ILCS 60/103 (West 2022))], and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article [(725 ILCS 5/110-10(b) (West 2022))] can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a) [(*id.* § 110-6.1(a)(8))] ***." (Emphasis added.) *Id.* § 110-6.1(e)(1) to (3).

Unlawful possession of a weapon by a felon is "an offense listed in subsection (a)." See *id.* § 110-6.1(a)(6)(O). If proof of unlawful possession of a weapon, *per se*, were enough to prove a "real and present threat," the second element, listed above (see *id.* § 110-6.1(e)2)), would be superfluous. The "real and present threat" must be proven by "conduct" in addition to the possession of a weapon: "conduct" such as "a forcible felony, the obstruction of justice, intimidation, injury, or abuse." *Id.*

¶ 29　　　　Granted, by telling the police he knew nothing about the Chrysler and by giving the police a false name and date of birth, defendant may well have committed obstruction of justice in the sense of furnishing false information to prevent apprehension. See 720 ILCS 5/31-4(a)(1) (West 2022). Arguably, though, when committed in that manner, obstruction of justice would have no tendency to prove he was especially dangerous; it would prove only that he was deceitful. It could be that, in the context of section 110-6.1(e)(2), obstruction of justice is limited to conduct comparable to intimidation, injury, or abuse—such as by "[i]nducing a witness," by threats or injury, "to leave the State or conceal himself or herself." *Id.* § 31-4(a)(2).

¶ 30　　　　Perhaps the conduct in section 110-6.1(e)(2) could include an egregious way of committing unlawful possession of a weapon by a felon. For example, a felon who brought a loaded assault rifle with him in a car, within easy reach, in a heavily populated area would pose a greater threat to the community than a felon who, in a rural area, had no firearm but, instead, had only a single round of ammunition in his pocket. The conduct of loading the rifle and bringing it onto a public highway might qualify as threatening conduct over and above the bare commission of unlawful possession of a weapon by a felon. Evidently, the circuit court had this conduct in mind when finding defendant's "possession of [a] loaded AR 15 in a car on a public highway" was a reason less restrictive means would not assure the safety of the community. The trouble is, it is unclear that this conduct is comparable to "a forcible felony, the obstruction of justice, intimidation, injury, or [domestic] abuse." 725 ILCS 5/110-6.1(e)(2) (West 2022); see *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 211 (1994) ("The doctrine of *ejusdem generis* provides that when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those 'others such like' the named persons or things.")

¶ 31    The record does not appear to contain any evidence of menacing or dangerous conduct associated with defendant's mere unlawful possession of the pistol. The prosecutor never represented that the pistol would have been within easy reach of a driver of the Chrysler. Instead, the pistol was stashed in a backpack—which, for all we know, might have been in the trunk.

¶ 32    We are looking for extra conduct indicative of a real and present threat. See 725 ILCS 5/110-6.1(e)(2) (West 2022). The defensibility of the detention order might depend on whether the previous conviction of aggravated battery could serve as such extra conduct. It seems to us that, on this question, arguments could be made *pro* and *contra*. On the *pro* side, section 110-6.1(g)(2)(A) provides that, "in making a determination of dangerousness," the circuit court may consider "[a]ny evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior." *Id.* § 110-6.1(g)(2)(A). Committing aggravated battery by strangling someone fits the description of violent, abusive, or assaultive behavior. On the *contra* side, however, it could be argued that the aggravated battery is not a "specific articulable fact[ ] of the [present] case" (*id.* § 110-6.1(e)(2), (g)) but, instead, is a specific, articulable fact of case No. 13-CF-137. Maybe, under section 110-6.1(e)(2), there must be extra conduct associated with the commission of the offense, and under section 110-6.1(g)(2)(A), that extra conduct is evaluated in the light of the defendant's criminal history. In any event, it might be questioned whether a conviction from 2013 could reasonably be regarded as clear and convincing evidence of a "real and *present* threat." (Emphasis added.) *Id.* § 110-6.1(e)(2). Then there is the further complication that, unless an aggravated battery inflicts great bodily harm, it is not a forcible felony—or so *People v. Schmidt*, 392 Ill. App. 3d 689, 696 (2008), appears to hold.

¶ 33    Given all these perplexities arising from the new statutory provisions, we need an argument by defendant that is more developed than the check marked, preprinted language on

dangerousness. Lacking the benefit of a reasoned argument for defendant's position—and, consequently, lacking a substantial counterargument by the State (which, in its memorandum, had little to respond to)—we cannot justifiably characterize the finding of dangerousness as an abuse of discretion. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 26-30.

¶ 34 Defendant's second contention in his notice-of-appeal form is that,

"[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case, or defendant's willful flight."

Again, the only further explanation defendant provides is not much of an explanation: "Insufficient facts alleged in the State's proffer." Defendant does not explain what conditions the circuit court should have imposed in lieu of pretrial detention and why there would be reason to believe that those conditions would have mitigated the real and present threat. Thus, defendant offers no reasoned argument on the basis of which we might find an abuse of discretion.

¶ 35 Defendant's third contention is that "[t]he court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." This contention pertains to a revocation of pretrial release, not to a denial of pretrial release. See 725 ILCS 5/110-6(a) (West 2022).

¶ 36                                    III. CONCLUSION

¶ 37 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 38 Affirmed.

¶ 39 JUSTICE DeARMOND, specially concurring:

¶ 40    I concur in the result but must specially concur because I disagree with the process by which we got there. I disagree with the time spent constructing arguments for defendant—something we have said, so many times, we should not and will not do. "[E]ven under the unique circumstances created by the Act, we cannot be expected to formulate an argument for defendant out of whole cloth, and we decline to do so." *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13. " 'The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " *Inman*, 2023 IL App (4th) 230864, ¶ 13 (quoting *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88, 36 N.E.3d 373). Or perhaps my all-time favorite in this vein—"Judges are not like pigs, hunting for truffles buried in briefs." *People v. Shelton*, 401 Ill. App. 3d 564, 575, 929 N.E.2d 144, 156 (2010) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

¶ 41    Taken in the order in which they appear: (1) Time is spent addressing an issue defendant argued at the detention hearing but did not raise on appeal. If he has not raised it, why would it need to be addressed? (2) Pointing out the various ways the State's proffer *would have been insufficient if*…, and (3) what I consider, in my humble opinion, an unnecessary analysis of what might constitute sufficient evidence of "dangerousness" based on the nature of the firearms charges. We conclude, almost begrudgingly, defendant's failure to raise a "reasoned argument" (like those being suggested for him) prevents us from finding an abuse of discretion. Instead, we have chosen to conclude, as a matter of law, there must be additional evidence of conduct, in a case where the nature of the firearms offense is part of the circuit court's consideration of "dangerousness," based on an argument never made by defendant and not necessary to the decision. It is for these reasons I must specially concur.